UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Lisa F., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Civ. No. 21-16772 (KM) <br><br> **OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

Lisa F. brings this action to review a final decision of the Commissioner of Social Security ("Commissioner") denying her claims for Title II Disability Insurance Benefits ("DIB") and Title XVI supplemental social security income. Upon reviewing and weighing certain evidence, the Administrative Law Judge ("ALJ") concluded that Lisa F. was not disabled from January 23, 2019, through February 10, 2021, the date of the decision. Lisa F. claims the ALJ's decision is not supported by substantial evidence.

I find that the ALJ's determinations that Lisa F., despite her physical and mental limitations, was able to engage in substantial gainful activity were unsupported by substantial evidence, specifically with regard to manipulative limitations. The Commissioner's decision is therefore **REVERSED**.

1

**I.     BACKGROUND**[1]

Lisa F. applied for DIB pursuant to Sections 216(i) and 223(d) of the Social Security Act ("SSA") and for supplemental social security income pursuant to section 1614(a)(3)(A) of the Social Security Act on February 21, 2019, alleging disability as of January 23, 2019. (AR 24.) Lisa F.'s application was denied initially and on Reconsideration. (AR 124–206.) Lisa F. requested a hearing before an ALJ to review her application de novo. (AR 207–08.) A hearing was held on October 14, 2020, before ALJ Richard West, who issued a decision on February 10, 2021. ALJ West denied disability at step five of the sequential evaluation, finding that, although Lisa F. could no longer perform her past relevant work, she is capable of adjusting to a range of sedentary jobs that accommodate her limitations and exist in significant numbers in the national economy. (AR 37–39.)

Lisa F. requested Appeals Council Review of ALJ West's decision, but her request was denied on July 20, 2021. This denial rendered ALJ West's decision the final decision of the Commissioner. (AR 1–20.) Lisa F. now appeals that decision, pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

**II.    DISCUSSION**

**A. Five-Step Process and this Court's Standard of Review**

To qualify for Title II DIB benefits and for supplemental social security income for disability, a claimant must meet the insured status requirements of 42 U.S.C. § 423. To qualify, a claimant must show that she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted

---

[1] Certain citations to the record are abbreviated as follows:

DE = docket entry in this case

AR = Administrative Record (DE 7)

Pl. Br = Plaintiff's brief in support of its remand (DE 14)

(or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(c), 1382(a).

Under the authority of the SSA, the Social Security Administration (the "Administration") has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 CFR §§ 404.1520, 416.920. This Court's review necessarily incorporates a determination of whether the ALJ properly followed the five-step process, which is prescribed by regulation. The steps may be briefly summarized as follows:

> **Step 1:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 CFR §§ 404.1520(b), 416.920(b). If not, move to step two.
>
> **Step 2:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.
>
> **Step 3:** Determine whether the severe impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 CFR Pt. 404, Subpt. P, App. 1, Pt. A. If so, the claimant is automatically eligible to receive disability benefits (and the analysis ends); if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).
>
> **RFC and Step 4:** Determine the claimants "residual functional capacity," (the "RFC") meaning "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). *Caraballo v. Comm'r of Soc. Sec.*, 2015 WL 457301, at *1 (D.N.J. Feb. 3, 2015). Decide whether, based on her RFC, the claimant can return to her prior occupation. 20 C.F.R. § 1520(a) (4)(iv); *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.
>
> **Step 5:** At this point, the burden shifts to the Administration to demonstrate that the claimant, considering her age, education, work experience, and RFC, is capable of performing jobs that exist

3

in significant numbers in the national economy. 20 CFR §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

For the purpose of this appeal, the Court conducts a plenary review of the legal issues. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). The factual findings of the ALJ are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (citing 42 U.S.C. § 405(g)).

This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Commissioner's decision, or it may remand the matter to the Commissioner for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865–66 (3d Cir. 2007). Outright reversal with an award of benefits is appropriate only when a fully developed administrative record contains substantial evidence that the claimant is disabled and entitled to benefits. *Podedworny*, 745 F.2d at 221–222; *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000).

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five-step inquiry. *See Podedworny*, 745 F.2d at 221–22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119–20 (3d Cir. 2000); *Leech v. Barnhart*, 111 F. App'x 652, 658 (3d Cir. 2004) ("We will not accept the ALJ's conclusion that Leech was not

disabled during the relevant period, where his decision contains significant contradictions and is therefore unreliable."). It is also proper to remand where the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted).

### B. The ALJ's Decision

ALJ West undertook the five-step inquiry. His conclusions are summarized as follows:

### Step 1

ALJ West concluded that despite two unsuccessful work attempts, Lisa F. has not engaged in any substantial gainful activity since January 23, 2019, the alleged onset date of her disability. (AR 26-27.)

### Step 2

The ALJ found that Lisa F. had the following severe impairments: inflammatory arthritis, right knee impairment, fibromyalgia, inflammatory bowel disease (IBD), gastroesophageal reflux disease (GERD), depression, anxiety, attention deficit-hyperactivity disorder (ADHD), and history of alcohol abuse. (AR 27.) Because the ALJ found that Lisa F. did suffer from several severe impairments, he proceeded to step 3.

### Step 3

With respect to her severe impairments, Lisa F. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 27.). ALJ West paid particular attention to medical listings 5.06 (Inflammatory bowel disease), 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), 12.11 (neurodevelopmental disorders), and 14.09 (inflammatory arthritis). (AR 27.)

First, ALJ West declined to find that Lisa F.'s impairments met the criteria for medical listing 5.06 (Inflammatory bowel disease) because there was "no evidence of obstruction of stenotic areas, confirmed by appropriate medically acceptable imaging or in surgery, requiring hospitalization for

decompression or for surgery on two occasions at least 60 days apart within a consecutive 6-month period." (AR 27.)

Second, ALJ West declined to find that Lisa F. met the requirements of listing 14.09 (inflammatory arthritis), because "the evidence demonstrates neither 'inability to ambulate effectively' … nor 'inability to perform fine and gross movements effectively'" and she does not use a cane or walker. (DE 27-28.) In addition, West found "there is no indication of 'ankylosing spondylitis or other spondyloarthropathies,' as shown by medically acceptable imaging and measured on physical examination." (DE 28.)

Next, ALJ West measured Lisa F.'s limitations against the criteria of listings 12.04, 12.06, and 12.11.

ALJ West found that Lisa F.'s mental impairments, both individually and in combination did not meet the criteria of medical listings 12.04, 12.06, and 12.11. (AR 28-29.) Specifically, the "paragraph B" criteria were not satisfied. To satisfy "paragraph B" criteria, a claimant's mental impairments "must result in at least one extreme or two marked limitations in a broad area of functioning which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves." (AR 28.)[2] In particular, he found that the medical

---

² A claimant's affective disorder meets or medically equals listing 12.04 (Depressive, bipolar and related disorders) when it either satisfies both the paragraph A and paragraph B criteria, or satisfies the C criteria of that listing. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.04.

To satisfy the paragraph A criteria, a claimant must, in essence, medically document the persistence of depressive or bipolar syndrome. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.04. To satisfy the Paragraph B criteria of listing 12.04, a claimant must demonstrate that his affective disorder results in "extreme limitation of one, or marked limitation of two" of the following areas of mental functioning:

1. Understand, remember, or apply information.
2. Interact with others.
3. Concentrate, persist, or maintain pace.
4. Adapt or manage oneself.

*Id.*

6

evidence demonstrates that Lisa F. had only moderate limitation in the areas of "concentrating, persisting, or maintaining pace" and mild limitation in the areas of "understanding, remembering, or applying information;" "interacting with others;" and "adapting or managing oneself." (AR 28-29.) Specifically, ALJ West concluded that Lisa F. had moderate limitations in the area of concentrating, persisting, or maintaining pace because had difficulty concentrating and following instructions but she "was able to do simple calculations and serial 3's, and she repeated 5 digits forward and 4 digits backwards on digit span task." (AR 29.) With regard to understanding, ALJ West concluded she had only mild limitations because "her thought process was coherent and goal directed, expressive and receptive language skills were adequate, she was able to recall 2/3 objects immediately and 2/3 objects after 5 minutes." (AR 28.) With regard to interacting with others, West assessed only a mild limitation because Lisa F. reported getting along well with authority figures and had a strong support network. (AR 29.) Finally, as for adapting and

---

"'Marked' as a standard for measuring the degree of limitation . . . means more than moderate but less than extreme." *Id.* § 12.00.

Listing 12.04, Paragraph C states:

> Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both: (1) Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and (2) Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(C). *See generally Trzeciak v. Colvin*, No. CV 15-6333 (KM), 2016 WL 4769731, at *7 (D.N.J. Sept. 12, 2016).

To meet or medically equal Listing 12.06 (Anxiety and Compulsive Disorders), a claimant must medically document, an anxiety, panic, or obsessive-compulsive disorder *and* the same "Paragraph B" criteria as for medical listing 12.04, *supra.* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06; *see also* https://www.ssa.gov/disability/professionals/bluebook/12.00-MentalDisorders-Adult.htm.

7

managing oneself, West found that Lisa F. had only a mild limitation because her insomnia was well-controlled with Ambien and her mental condition was stable with treatment. (AR 29.)

ALJ West also found that Lisa F. did not meet the "paragraph C" criteria. (AR 30.) ALJ West also considered Lisa F.'s degree of mental limitation when determining Lisa F.'s RFC.

### RFC and Step 4 – Ability to Perform Past Work

Next, ALJ West defined Lisa F.'s RFC:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she cannot climb ladders, ropes or scaffolds, and can perform other postural functions occasionally; she can perform manipulative functions frequently; she must avoid concentrated exposure to extreme cold; she must avoid dangerous machinery and unprotected heights; and she can understand, remember and carry out simple instructions on a simple basis.

(AR 30).

ALJ West began his RFC analysis by explaining that he followed a two-step process in which he first determined whether Lisa F. had an underlying medically determinable physical or mental impairment "that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce [Lisa F.'s] pain or other symptoms." (AR 31.) He then explained that in the second step, he "must evaluate the intensity, persistence, and limiting effects of [Lisa F.'s] symptoms to determine the extent to which they limit [her] functional limitations." (AR 31.) To do this, he is required to look to objective medical evidence, or to the entire case record where objective medical evidence does not substantiate Lisa F.'s statements about "the intensity, persistence, and limiting effects claimant's symptoms." (AR 31.) ALJ West concluded that Lisa F.'s medically determinable impairments could reasonably be expected to cause the alleged mental and physical symptoms, but found that her statements "concerning the intensity,

persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 32-33.)

ALJ West explained that Lisa F. alleged "she is unable to work primarily due to [rheumatoid arthritis], which causes joint pain and fatigue and makes it difficult to get out of bed, and fibromyalgia, which causes muscle pain, fatigue, insomnia and cognitive/memory deficits." (AR 32.) In constructing Lisa F.'s RFC ALJ West considered Lisa F.'s various limitations and found that she was still capable of performing sedentary work, subject to some limitations.

I first summarize West's conclusions regarding Lisa F.'s physical limitations and then his conclusions regarding her mental limitations. First, regarding Lisa F.'s knee injury, ALJ West found that the medical evidence showed that "As of June 5, 2019, with the knee brace and further corticosteroid injections, the claimant's symptoms had improved with 'significant benefit' noted from the injections. (AR 33.) Still, he found that the knee injury limited her ability to ambulate and that wrist tenderness required lifting limitations. (AR 35.) Second, with regard to Lisa F.'s fibromyalgia, ALJ West noted that Dr. Tratenberg's examinations of her were normal, and that further examinations revealed normal range of motion and no deformities. (AR 33.) The ALJ found Dr. Tratenberg's medical source statement to be partially persuasive but found that nothing in the medical evidence, or Lisa F.'s function report, supported limitations on sitting. (AR 36.) Third with regard to Lisa F.'s gastrointestinal issues, ALJ west found that Lisa F. "complained of lower abdominal discomfort but denied nausea, vomiting, fever or chills." (AR 34.) Finally, with regard to Lisa F.'s fatigue, ALJ West concluded "the medical records are not consistent with fatigue to the extent alleged" and concluded that a limitation to sedentary work was sufficient. (AR 35.)

Regarding Lisa F.'s mental limitations, ALJ West noted that Dr. Kashoqa found that Lisa F. was limited in all four areas of mental functioning but did not specify the degree of limitation and also noted that Dr. Kashoqa's treatment records showed relatively normal mental status findings. (AR 35.) ALJ West also notes that Cristina Grand, Psy.D. assessed only mild limitations in three

9

areas and no limitations in understanding, remembering, and applying information. (AR 36.) ALJ West, however, rejected these findings and found that Lisa F.'s mental limitations limited her to unskilled work with simple instructions. (AR 36.)

Based on these findings, at step four, ALJ West concluded that Lisa F. was unable to perform her past relevant work as an administrative assistant, physical therapy aide, and hairstylist (AR 37.)

**Step 5**

At step five, ALJ West explained that "considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (AR 37.) Accordingly, he found that Lisa F. is not disabled under the SSA. (AR 38.)

ALJ West found that Lisa F.'s "ability to perform work at all exertional levels has been compromised by nonexertional limitations." (AR 30.) ALJ West did not rely on the testimony of a vocational expert, but rather used the "grids," *i.e.*, the "Medical Vocational Guidelines." (AR 37.) ALJ West concluded that Lisa F. was capable of performing a broad range of sedentary work and that her additional limitations have little effect on the range of sedentary work she can perform. First, ALJ West noted that Lisa F.'s inability to climb ladders, ropes and scaffolds and her inability to work in extreme cold would have little effect because such tasks are uncommon in sedentary work. (AR 38.) Conceding that "'significant' manipulative limitations would result in a significant erosion of available jobs," the ALJ noted that Lisa F. is able to perform manipulative functions frequently. (AR 38.) Finally, ALJ West found that Lisa F.'s limitation to carrying out simple instructions would not erode the occupational base. (AR 38.)

**C. Lisa F.'s Challenge**

Lisa F. challenges the Commissioner's decision on several grounds. She argues the ALJ erroneously analyzed the medical evidence, failed to properly evaluate her manipulative limitations, ignored Lisa F.'s subjective complaints,

10

and did not properly notify Lisa F. that the grids would be used at step 5. (Pl. Br. at 11-30.) Although I find most of these arguments unavailing, I agree that ALJ West did not properly analyze Lisa F.'s manipulative limitations, and I find that such manipulative limitations have the potential to greatly erode the occupational base, as ALJ West acknowledged in principle. I therefore find that the ALJ's decision was not supported by substantial evidence.

### 1. Analysis

I briefly dispose of Lisa F.'s less persuasive arguments before moving on to the issue of her manipulative limitations.

Lisa F.'s first argument focuses on ALJ West's finding that the evidence provided by Dr. Kashoqa was not persuasive. (Pl. Br. at 13.) She claims that these findings were not supported by substantial evidence because ALJ West erroneously claimed that Dr. Kashoqa's treatment records show relatively normal mental status findings. Lisa F. argues that his treatment notes support a greater degree of mental limitation than ALJ West acknowledged. None of the additional evidence that she cites, however, supports a greater limitation in any of the four areas of mental functioning; instead she points primarily to scattered evidence of anxiety. (Pl. Br. at 15-16.) Lisa F. also argues that her mental limitations were not properly integrated into the RFC, but I find that the ALJ's determination that a restriction to unskilled work was sufficient to meet her largely mild limitations was supported by substantial evidence.

Next, Lisa F. argues that the ALJ ignored her subjective complaints. (Pl. Br. 26.) This argument focuses largely on Lisa F.'s fibromyalgia, because fibromyalgia cannot be detected with objective medical tests and thus the ALJ must take into account the claimant's subjective description of her pain and fatigue. (Pl. Br. at 25-26.) I find, however, that the ALJ's analysis of Lisa F.'s fibromyalgia was supported by substantial evidence (except in relation to her manipulative limitations, as discussed below), and therefore reject this argument.

In addition, Lisa F. argues that the Commissioner failed to meet his burden at step 5, largely because he failed to consult a vocational expert and failed to give Lisa F. notice that he would not do so. (Pl. Br. at 28.) I find, however, that the ALJ's use of the grids was supported by substantial evidence. I also find that the lack of notice meets the "close scrutiny" standard because SSR 96-9p applies directly to Lisa F.'s non-exertional limitations. *See Breslin v. Comm'r of Soc. Sec.,* 509 F. App'x 149, 155 (3d Cir. 2013).

That said, I agree with Lisa F. that the ALJ did not properly analyze her manipulative limitations and therefore that the RFC was not supported by substantial evidence and therefore will remand the case.

The record evidence shows clearly that Lisa F. has a great deal of difficulty using her hands and wrists. There is an unexplained disconnect between this clear evidence and the ALJ's determination in her RFC that she could perform manipulative functions frequently. (AR 30.)

The record evidence shows that the combination of rheumatoid arthritis and fibromyalgia[3] has limited Lisa F.'s manipulative abilities. Dr. Tratenberg, for example, noted that Lisa F. suffered a great deal of pain and stiffness in her hands, likely due to fibromyalgia. (AR 808, 871, 874.) Lisa F. also testified that she cannot carry a basket of laundry and noted difficulty typing and writing with a pencil. (AR 32, 54.) Lisa F. receives cortisone injections in her wrists and fingers every three months to treat this condition. The ALJ's opinion did not, however, analyze whether this treatment was effective enough to allow her to manipulate small objects frequently on a day-to-day basis at a job, nor does it analyze whether she would be able to write or type in a work setting. (AR 32.)

Manipulative limitations are very important in the context of sedentary work, and the gap in the ALJ's analysis therefore cannot be written off as a harmless error. As ALJ West acknowledged, "SSR 96-9p provides that 'significant' manipulative limitations would result in a significant erosion of

---

[3] Lisa F.'s fibromyalgia diagnosis also supports the conclusion that not all of her pain may be detectable through objective medical tests. *See* SSR 12-2p.

available jobs." (AR 38.) This is the case because many sedentary jobs still require manual processes such as typing, and if the claimant is not able to use her hands effectively, she cannot perform the job. Thus on remand the ALJ should analyze closely Lisa F.'s limitations on the use of her hands and wrists and determine how those limitations affect the available jobs that she could perform.

### III.   CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED and REMANDED. An appropriate order accompanies this Opinion.

Dated: July 14, 2022

/s/ Kevin McNulty
**Hon. Kevin McNulty**
**United States District Judge**